## STATE OF FLORIDA v THOMPSON

### Case No. 86TT12818

County Court, Lee County

July 22, 1986

**APPEARANCES OF COUNSEL**

State Attorney (**David G. Pius,** Legal Intern) for plaintiff.
**Mark Steinberg** for defendant.

**87**

## OPINION OF THE COURT

SUSAN M. TYLER, County Judge.

### *FACTS*:

On July 8, 1986 this cause came to be heard upon Defendant's pre-trial oral Motion to Suppress an Intoxilyzer reading and consequential presumptions of impairment in a driving under the influence prosecution pursuant to Section 316.193, *Florida Statutes*. The State was represented by David G. Pius, and the Defendant by Mark A. Steinberg.

At the pre-trial hearing, Defendant stipulated to the proper maintenance and operation of the Intoxilyzer machine in issue. However, the Defendant argued that the State failed to lay a proper predicate for the introduction of the blood alcohol content (BAC) reading calculated by that machine because the State failed to present any evidence that the machinery was in compliance with 316.1934(2)(c), *Florida Statutes*; i.e., that "The percent by weight of alcohol in the blood shall be based upon grams of alcohol per 100 milliliters of blood".

The State called two (2) witnesses to lay the predicate for the introduction of Defendant's BAC reading. Correctional Officer Johnson, the Intoxilyzer maintenance technician, gave brief, uncontroverted testimony pertaining to the proper maintenance of the machine in issue, a CMI Intoxilyzer, Model 4011AS, and the State introduced into evidence without objection the applicable maintenance documents and proof of registration with the State of Florida, Department of Health and Rehabilitative Services (HRS). The Intoxilyzer Operator, Officer Perri, presented testimony and evidence that he was in possession of a valid permit to operate the machine in issue and that the test upon Defendant was performed in accordance with the methods approved by the State of Florida, Department of Health and Rehabilitative Services, as required by Section 316.1934(3); *Florida Statutes*.

Lastly, in response to Defendant's cross-examination as to precisely "what" this machine measured, Officer Perri responded that he believed it measured the percent of alcohol by volume of water to alcohol in the (Defendant's) blood.

No further witnesses were called or evidence submitted and counsel proceeded to make their respective arguments.

It was the decision of this Court that the State had in fact laid a proper predicate for the introduction of the BAC reading which reading consequently gives rise to the presumptions of impairment under Section 316.1934(2), *Florida Statutes*.

## DEFENDANT'S ARGUMENT:

Defendant argues that Section 316.1934, *Florida Statutes* governs the type of machinery which shall be used for the testing of one's blood alcohol content (BAC) and the presumptions of impairment which may be reached as a result of such testing, and further governs the standard for machinery used in testing for one's BAC. Specifically, Defendant cites the statute and asserts that the machine used must test "the percent by weight of alcohol in the blood shall be based upon grams of alcohol per 100 milliliters of blood", and that "The foregoing provisions of this subsection (i.e. 316.1934, *Florida Statutes—Presumptions of Impairment*) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired". Section 316.1934, *Florida Statutes* allows BAC test results which were performed substantially in accordance with methods approved by H.R.S. However, Defendant argues that there was no evidence presented by the State at pre-trial upon his Motion to Suppress that the Intoxilyzer used measured percent by weight of alcohol in Defendant's blood based upon the grams of alcohol per 100 milliliters of blood, or that it was otherwise in compliance with the requirements of 316.1934, *Florida Statutes*. Further, Defendant argues that a review of H.R.S. *Rules and Regulations* fails to require that such machinery used must comply with the statutory provisions, and even if there existed such a requirement, statutes prevail over rules and introduction or judicial notice of the rule itself is not sufficient to lay a proper predicate for the BAC results and presumptions of impairment (citing *Benyard v. Wainwright*, 322 So.2d 473 (Fla. 1975) and *S.R. v. State*, 346 So.2d 1018 (Fla. 1977)).

## STATE'S ARGUMENT:

The State argues that through the testimony of the Operator, it has shown that a CMI, Model 4011AS Intoxilyzer was used in the instant case to test Defendant's BAC, and that this model of machinery is listed among the devices specifically approved by the Federal Department of Transportation (DOT) as complying with the Federal Standards for evidential breath testers (49 *Fed. Reg.* 48857). Chapter 316.1934(3), *Florida Statutes* requires that BAC results will be considered valid only if testing was performed substantially in accordance with the methods approved by HRS, as codified in *Fla. Admin. Code*, Chapter 10D-42. The *Code* requires that BAC testing devices must be registered by the Department of HRS. The State argues that it proved the machinery was registered by the Department of HRS as required by the *Code*, and therefore, that it complies with the HRS criteria for

approval of evidential alcohol breath testing instruments, which, *inter alia*, requires that the instrument meet Federal DOT standards. Further, that to comply with the Federal standards, the instrument in issue must conform to performance specifications which define blood alcohol concentration in percent weight by volume based on .100 cubic centimeters (or milliliters) of blood. Therefore, the State concludes that because the Intoxilyzer in issue is registered with the Department of HRS it necessarily meets the statutory criteria set forth in Section 316.1934(2), *Florida Statutes*.

## DECISION:

Section 316.1934, *Florida Statutes* provides various presumptions that may be applied depending upon the amount of alcohol in a person's blood as shown by a chemical analysis of the person's blood or breath. Section 316.1934(2)(c) provides that if at the time of driving that was "0.10 percent or more by weight of alcohol in the person's blood, the fact shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent his normal faculties were impaired".

Section 316.1934(3) requires that in order to be considered valid under the provisions of the section, a chemical analysis of a person's breath to determine Blood Alcohol Content (BAC) must have been performed substantially in accordance with the methods approved by the Department of Health and Rehabilitative Services (HRS). The methods referred to are codified in *Fla. Admin. Code*, Chap. 10D-42. *Rule* 10D-42.23 provides that "(a)ll . . . devices used for breath testing under (the) provisions of Chapter 316, *Florida Statutes*, shall be . . . registered by authorized personnel of the Department".

The Department of Health and Rehabilitative Services' requirements for breath testing instruments states in part:

"1. (A) manufacturer wishing approval of an (alcohol breath testing) instrument shall submit . . .

⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

g. documentation that the instrument has met the standards set by (the) U.S. Department of Transportation or a certification from a recognized independent testing laboratory that the minimum specifications and requirements of the Department of Transportation have been met."

(HRS Standards for) Approval of Evidential Alcohol Breath Testing Instruments.

The foregoing document is a public record (Section 110.001(1) and

90

(2), *Florida Statutes*) and is a record of the Department setting forth the activities of the agency. It is therefore admissible under the Public Records Exception to the hearsay rules (Section 90.803(8), *Florida Statutes*). Further, under Section 90.902(4) *Florida Statutes* the certified copy if self-authenticating and thus admissible without the need to resort to extrinsic evidence or testimony.

Specifications for evidential breath testing devices, established by the Federal Department of Transportation's National Highway Traffic Safety Administration (NHTSA), are located at 49 *Federal Register* 48854-72. The purpose of the specifications is to establish performance criteria t insure that instruments which measure the alcohol content of the breath do so with sufficient accuracy for evidential purposes (49 *Fed. Reg.* at 48857).

Section 3.2 of the Model Specifications defines BAC as "(b)lood alcohol concentration expressed in percent weight by volume (% w/v) based upon grams of alcohol per 100 cubic centimeters of blood. . . ." *id*. While the DOT specification refers to "cubic centimeters" of blood, one cubic centimeter is equal to one milliliter, thus "grams of alcohol per 100 *cubic centimets* [sic] of blood" as described in the DOT specifications (emphasis supplied) is equivalent to "grams of alcohol per 100 *milliliters* of blood" as described in Section 316.1934(2)(c), *Florida Statutes*. (Also, *see Webster's Ninth Collegiate Dictionary*, Metric Conversion Table p. 748).

The equivalency is a fact not subject to dispute because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned". It is, therefore, a matter of which this court may take judicial notice under Section 90.202(12), *Florida Statutes*. In addition, this court may take judicial notice of the Department of Transportation specifications published in the Federal Register (Section 90.202(3), *Florida Statutes*.

Therefore, if the instrument used to test the Defendant's breath was registered by the Department of Health and Rehabilitative Services as required by *Fla. Admin. Code*, Rule 10D-42.23, it would comply with the HRS criteria for Approval of Evidential Alcohol Breath Testing Instruments, which *inter alia*, requires that the instrument meet Federal DOT standards. Further, to comply with the federal standards the instrument must conform to specifications which express Blood Alcohol Concentration in percent weight by volume based upon grams of alcohol per 100 cubic centimeters (or milliliters) of blood. Therefore, if the instrument is registered by the Department of Health and Rehabilitative Services it meets the criteria at issue in Section 316.1934(2)(c), *Florida Statutes*.

This is true despite the fact that the operator believed the device measured something other than that which it was designed to measure. The operator's opinion or belief does not change a mechanical fact or reality; rather his testimony might be used instead for impeachment purposes.

At the pre-trial hearing the State introduced into evidence the checklist completed by the operator of the instrument used to test the defendant's breath. Counsel for the defense did not object to the document, and in fact, stipulated to its admission. The checklist demonstrates that the instrument used for the breath testing was a CMI, Inc. Intoxilyzer Model 4011AS. As noted at 49 *Fed. Reg.* 48864, the CMI 4011AS is included in the Federal Department of Transportation's "Conforming Products List of Evidential Breath Measurement Devices". Thus the specific model of Intoxilyzer used to measure the alcohol content of the defendant's breath conforms to the DOT standards of accuracy for the measurement of Blood Alcohol Concentrations (BAC), and, as noted above, BAC is expressed in grams of alcohol per 100 cubic centimeters (or milliliters) of blood.

This Court accepts the logic of the State's argument and takes judicial notice of the cited portions of the Federal Register as well as the metric conversion factor. As a certified copy of a public record, the HRS approval standards are also accepted.

The Court also notes that the defendant's reliance on *Benyard v. Wainwright*, 322 So.2d 473 (Fla. 1975) and *S.R. v. State*, 346 So.2d 1018 (Fla. 1977) is inappropriate. Those cases dealt with circumstances where a conflict existed between the statutes and the rules. Substantive statutes may prevail over conflicting procedural rules, but that is not the issue in the instant case where the rules do not conflict with the statute, but rather serve to implement authority granted to the Department of HRS by the legislature.

This Court, therefore, holds that the State has sufficiently demonstrated that the instrument used to take the defendant's breath sample complies with Section 316.1934(2)(c), *Florida Statutes* so as to properly apply the presumptions of impairment set forth in the statute, and thus the State may introduce evidence of the Intoxilyzer results to the jury.

DONE AND ORDERED on this 22nd day of July, 1986.